UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:12-CV-00090-TBR

STANLEY BEAUCHAMP                                                                                    Plaintiff

v.

CITY OF PADUCAH and PADUCAH HUMAN                                                    Defendants
RIGHTS COMMISSION

**MEMORANDUM OPINION**

This matter is before the Court upon Defendants City of Paducah and Paducah Human Rights Commission's (PHRC) Motion for Summary Judgment. (Docket No. 27.) Defendants have supplemented their Motion for Summary Judgment. (Docket No. 34.) Plaintiff Stanley Beauchamp has responded. (Docket No. 38.) Defendants have replied. (Docket No. 39.) Defendants have supplemented their reply. (Docket No. 40.) This matter is now fully briefed and ripe for adjudication. For the following reasons, the Court will **GRANT** Defendants City of Paducah and the PHRC's Motion for Summary Judgment. (Docket No. 27.)

Plaintiff Stanley Beauchamp has filed a Motion for Jury Trial. (Docket No. 37.) Because the Court will grant Defendants' Motion for Summary Judgment, (Docket No. 27), it will **DENY** Plaintiff's Motion for Jury Trial, (Docket No. 37).

BACKGROUND

Plaintiff Stanley Beauchamp was hired by the PHRC as its Executive Director on February 28, 1994. (Docket No. 1, at ¶ 13.) Previously, in a separate action on September 25,

2008, he filed a complaint in this Court against Paducah and its former City Manager alleging they subjected him to unlawful race discrimination, harassment, and retaliation in violation of his civil rights under Title VII and the Fourteenth Amendment of the Constitution. (Docket No. 1, at 3-4; *see also* 5:08-cv-00156.) In that case, this Court granted the defendants summary judgment, finding that the Plaintiff had failed to establish a *prima facie* case of discrimination or retaliation and, in any event, had failed to overcome the defendants' evidence of legitimate, non-discriminatory reasons justifying any adverse employment action he may have suffered. (5:08-cv-00156, Docket No. 41, at 3-6.)

The Complaint in this current action was filed on July 2, 2012. (Docket No. 1.) Plaintiff alleges unlawful retaliation against him by the Defendants, the City of Paducah and the PHRC, for engaging in activities protected by: Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the Kentucky Civil Rights Act (KCRA).[1] (*Id*. at ¶¶ 1, 23-24.) Specifically, he alleges the PHRC and the City of Paducah "embarked on a deliberate, intentional unlawful course of harassing, discriminatory, and retaliatory conduct against Beauchamp from the time that the Defendants learned of Beauchamp's intent to file the Charge underlying Civil Cause No. 5:08-cv-00156 through their unlawful termination of Beauchamp's employment." (*Id*. at ¶ 15.) Plaintiff's retaliation claims are based upon: (1) his termination on April 21, 2010; (2) an imposition of a written warning on February 26, 2010; (3) a negative job

---

[1] In Plaintiff's response brief, (Docket No. 38, at 1-2), he asserts retaliation claims for the first time under the Age Discrimination in Employment Act, Fair Labor Standards Act, and Equal Pay Act. Plaintiff cannot raise such claims for the first time at this late stage of the proceedings and, therefore, the Court will only consider those claims made in his Complaint. (Docket No. 1.)

performance evaluation on February 26, 2010; and (4) a salary reduction on June 2, 2009.[2] (Docket No. 1, at ¶¶ 16-20.)

Defendants deny that any retaliation occurred as a result of Plaintiff's previous lawsuit, 5:08-cv-00156, and his previous EEOC Charges of Discrimination. (Docket No. 27-1, at 3.) Furthermore, Defendants argue that Plaintiff is unable to establish a *prima facie* case of retaliation and that all but one of Plaintiff's claims are time-barred. (*Id*.) Finally, with respect to the City of Paducah, Defendants argue Plaintiff's Title VII claims must also be dismissed because the City is not Plaintiff's "employer" within the meaning of Title VII. (*Id*. at 13.)

STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the

---

[2] Plaintiff also generally alleges retaliation in that "from approximately June 2009 through the balance of [his] employment, Defendants publicly disparaged [his] professional reputation and placed unreasonable restrictions on his authority to act and speak as the PHRC Executive Director," and imposed menial busy work assignments. (Docket No. 1, at ¶ 16.)

trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The plaintiff may accomplish this by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). Mere speculation will not suffice to defeat a motion for summary judgment; "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lews v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012).

DISCUSSION

I. The City of Paducah is Not Plaintiff's Employer for Title VII Purposes

Regarding the City of Paducah, Defendants argue Plaintiff's claims must be dismissed because the City is not Plaintiff's employer within the meaning of Title VII. (Docket No. 27-1, at 13.) The crux of Defendants' argument is that the PHRC and the City should not be considered a single employer for Title VII purposes.

   A. Standard For Determining Whether the City and the PHRC Are a Single Employer

The Sixth Circuit has not promulgated a standard for determining whether governmental entities should be considered a single employer for Title VII purposes. *See Buckhard v. Henry Soil & Water Conservation Dist.*, 2005 WL 1863828, at *2 (N.D. Ohio. Aug. 3, 2005). However, the Eleventh Circuit has delineated a standard, which at least three other district courts in the

Sixth Circuit have adopted, for determining when governmental entities should be considered a single employer:

> To summarize, we hold that when assessing whether multiple governmental entities are a single "employer" under Title VII, we begin with the presumption that governmental subdivisions denominated as separate and distinct under state law should not be aggregated for purposes of Title VII. That presumption may be rebutted by evidence establishing that a governmental entity was structured with the purpose of evading the reach of federal employment discrimination law. Absent an evasive purpose, the presumption against aggregating separate public entities will control the inquiry, unless it is clearly outweighed by factors manifestly indicating that the public entities are so closely interrelated with respect to control of the fundamental aspects of the employment relationship that they should be counted together under Title VII.
>
> The standard we adopt is not whether a fact finder reasonably could conclude the plaintiff has overcome the presumption. Instead, the standard is whether the fact finder reasonably could conclude the plaintiff has *clearly* overcome the presumption . . . Absent evidence of evasive purpose, in order to survive a motion for summary judgment, a plaintiff will have to show that a reasonable fact finder could conclude that the presumption of distinctness is clearly outweighed.

*Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1345-46 (11th Cir. 1999) (en banc). Finding the reasoning of *Lyes* convincing, this Court will apply this standard.[3]

    B.  Application of Standard

        1.  Presumption of Separateness Between the PHRC and the City

In this case, the presumption of distinctness of the PHRC and the City of Paducah is established by Ky. Rev. Stat. §§ 344.310 and 344.320 and the ordinance creating the PHRC, (Docket No. 27-4). *See Lyes*, 166 F.3d at 1346 (finding Florida law established the presumption when legislation established the Community Redevelopment Agency was a separate and distinct entity). § 344.310 permits any city or county to create a human rights commission. § 344.320

---

[3] The Court notes that the Defendants advocated for the application of this standard and the Plaintiff does not appear to disagree that it should be applied.

outlines the powers those commissions may be authorized to have, including the power to "[e]mploy an executive director, attorneys, hearing examiners, clerks and other employees." The ordinance creating the PHRC essentially gives it all the powers authorized by § 344.320, including the power to employ an executive director and other employees and agents. (Docket No. 27-4, at 3.) Therefore, this clear distinction drawn between the PHRC and the City raises the presumption that they are separate and distinct entities.

2. Plaintiff Cannot Rebut The Presumption of Separateness

As outlined above, the presumption of separateness may only be rebutted by evidence of a purpose to evade federal employment discrimination law or evidence that "the public entities are so closely interrelated with respect to control of the fundamental aspects of the employment relationship" that a reasonable fact finder could conclude the plaintiff has *clearly* overcome the presumption. *Lyes*, 166 F.3d at 1345; *see also Dumas v. Hurley Medical Center*, 905 F. Supp. 2d 775, 782 (E.D. Mich. 2012) (finding employee who worked for public hospital was not an "employee" of the City under Title VII). Plaintiff alleges he is City employee, and the presumption should be rebutted because the Paducah City Commissioners approved his hire, the city manager and finance director's signatures were embossed across his checks, the PHRC Commissioners are appointed by the City Commissioners, and his office was on the first floor of City Hall. (Docket No. 38, at 14-15.)

Regarding Plaintiff's allegation that the Paducah City Commissioners approved his hire, while from 1994-1996 it appears the City *may* have been Plaintiff's employer, in 1996 it is clear that the PHRC became Plaintiff's employer—if it was not already. In 1996 the City delegated to the PHRC discretionary spending authority over the funds the City appropriated to it each year

and made clear the PHRC—not the City—employed the Executive Director. (*See* Docket No. 44-1.) Plaintiff's documents used to support this allegation, (Docket No. 38-1), including correspondence with the City and a City-issued identification card, all are dated prior the 1996 decision giving this authority to the PHRC. (*See* Docket No. 39, at 8-9.) Thus, the Paducah City Commissioners initial appointment is not sufficient to overcome the presumption.

However, the Court is concerned by Plaintiff's brief allegation, (Docket No. 38, at 14), unsupported by any citation, that "the city manager and finance director's signature was embossed across my checks." Notably, Defendants have not responded to or addressed this accusation in their reply brief. (*See* Docket No. 39.) In *Burkhard*, the Northern District of Ohio found that because an employee of Henry Soil and Water Conservation District (District) listed Henry County on his W-2 form, the County Auditor issued paychecks from the County's Account to the District's employees, and the employee's pay stub listed him as employee 119 there was "significant evidence of interrelation between the District and County." *Burkhard*, 2005 WL 1863828, at *3. That court also mentioned other factors indicating interrelation, including the County playing a significant role in the determination and administration of employee benefits, the County's workers' compensation policy covered the District, and the County Commissioners determining what paid holidays the District's employees received. *Id*. at *4. Nevertheless, the Court implied that the former considerations—the County essentially paying the District employee and regarding it as an employee of their own—was independently sufficient to overcome the presumption of separation. *Id*. This was despite the fact that the "District's employees are supervised by and take direction from the District Administrator Robert George and are answerable only to George and the District's Board of Supervisors." *Id*. at *3.

However, it is worth noting that *Burkhard* involved a motion to dismiss, rather than a motion for summary judgment.

In any event, even assuming the City was cutting the checks to Plaintiff, the Court finds that insufficient to rebut the presumption of separateness. "Governmental subdivisions such as counties or towns, or smaller subdivisions such as local agencies, may share sources of ultimate political control or funding, yet be wholly distinct with respect to their day-to-day operations or their control over relationships with employees." *Lyes*, 166 F.3d at 1343. In this case, "the fundamental aspects of the employment relationship that *gave rise to the claim*" are controlled by the PHRC—not the City. *Id.* at 1345 (emphasis added); *see also Schwarz v. Berrien Springs Police Dep't*, 1999 WL 819639, at *8-10 (W.D. Mich. Aug. 6, 1999) (finding insufficient evidence to rebut the presumption of separateness). Plaintiff's retaliation claims are based upon: (1) his termination on April 21, 2010; (2) an imposition of a written warning on February 26, 2010; (3) a negative job performance evaluation on February 26, 2010; and (4) a salary reduction on June 2, 2009. (Docket No. 1, at ¶¶ 16-20.) The day-to-day operations, hiring and firing authority, and decisions regarding discretionary spending, are all controlled by the PHRC members and the PHRC Board. The PHRC has complete discretion when it comes to spending and employment decisions. Therefore, the PHRC controls "the fundamental aspects of its employee relations" and clearly controls the aspects of the employment relationship that "*gave rise to the claim*." *Dumas*, 905 F. Supp. 2d at 782; *see Lyes* 166 F.3d at 1346. To the extent the analysis in *Burkhard* would be inconsistent with this conclusion, which it would not appear to be when taking into account the plethora of other factors indicating interrelation in that case and that it involved a motion to dismiss, this Court would respectfully disagree.

Likewise, the fact that the PHRC Commissioners are appointed by the City Commissioners is not sufficient to overcome the presumption because the PHRC controls the fundamental aspects of the employment relationship giving rise to the claim.[4] *See Dumas*, 905 F. Supp. 2d at 782 (finding hospital employee was not a City employee, despite the City owning the hospital and the Board of Hospital Mangers being appointed by and capable of being removed by the Mayor and City Council). Finally, the fact that the City of Paducah provides the PHRC with office space in City Hall, without more, is not sufficient to permit a reasonable fact finder to conclude the Plaintiff has *clearly* overcome the presumption. Additionally, there is no evidence of, and Plaintiff has not alleged, an evasive purpose to evade federal employment laws.

Accordingly, the presumption controls and the PHRC and the City of Paducah are considered separate entities for purposes of Title VII.[5] Therefore, because the City of Paducah is not Plaintiff's employer, the claims against it under Title VII must be dismissed. Furthermore, because the City of Paducah and the PHRC are considered separate for purposes of Title VII, the claims against the PHRC under Title VII must also be dismissed because it only employs one person, which is less than the strict numerosity requirement to be considered an "employer" under 42 U.S.C. § 2000(e)(b) (requiring fifteen or more employees to be considered an employer).

---

[4] The PHRC is composed of nine members who are appointed by the Mayor, subject to the approval of the Board of Commissioners. (Docket No. 27-4, at 1.)

[5] Although not determinative, the Court notes that Plaintiff's own testimony and statements made during his previous lawsuit supports the finding that the PHRC and City of Paducah are separate entities. In a deposition, he testified that he was employed by the PHRC. (Docket No. 43-1, at 33.) In his Charge of Discrimination filed with the EEOC preceding his first lawsuit, he stated that the PHRC was "an advisory board, not a city department." (Docket No. 43-7, at 19.) Finally, he testified that the PHRC members are his supervisors and if he were to be terminated it would be by them. (Docket No. 43-1, at 33.)

Similarly, in this current lawsuit, he has stated that the PHRC has the ability to discipline him, was his immediate supervisor, is allocated funds by the City with discretion to spend as it chooses, and has the ability to seek funds from sources other than the City. (Docket No. 42, at 13-14, 47-52.)

II.  All But One of Plaintiff's Title VII Claims and All of His § 1983 Claims Are Time-Barred

Although not required to address Defendants' contention that all but one of Plaintiff's Title VII claims are time-barred because, as discussed above, the City is not Plaintiff's employer and the PHRC does not meet the numerosity requirement under Title VII, the Court will nevertheless briefly address this alternative contention. (Docket No. 27-1, at 18-20.) Kentucky is a deferral state, and Title VII requires Plaintiff to file his retaliation charges with the EEOC within 300 days of the alleged retaliatory acts prior to filing suit in this Court. *Maurya v. Peabody Coal Co.*, 823 F.2d 933, 934-35 (6th Cir. 1987).

Plaintiff's retaliation claims are based upon: (1) his termination on April 21, 2010; (2) an imposition of a written warning on February 26, 2010; (3) a negative job performance evaluation on February 26, 2010; and (4) a salary reduction on June 2, 2009. (Docket No. 1, at ¶¶ 16-20.) Plaintiff filed his EEOC Complaint on February 4, 2011. Therefore, all claims, other than the one involving his termination on April 21, 2010, are time-barred because more than 300 days passed between the dates of those incidents and the date the EEOC charge was filed.[6]

As for Plaintiff's § 1983 claims, the applicable statute of limitations for § 1983 actions in Kentucky is one year. *Collard v. Kentucky Board of Nursing*, 896 F.2d 179, 182-83 (6th Cir. 1990). Plaintiff filed his Complaint on July 2, 2012. (Docket No. 1.) Therefore, his § 1983 claims were made more than one year after his most recent allegation of retaliation on April 21, 2010, and, accordingly, are time-barred.

---

[6] Additionally, Plaintiff's claim regarding his salary reduction would be barred by the doctrine of *res judicata* or claim preclusion. Previously, in the first lawsuit, this Court granted defendants' motion for summary judgment finding, in relevant part, that the decision to reduce Plaintiff's salary was based entirely on legitimate, non-discriminatory reasons. (5:08-cv-00156, Docket No. 41, at 6.)

III.   Plaintiff's Inability to Establish a *Prima Facie* Case

Defendants also argue Plaintiff's claims are barred because he cannot establish a *prima facie* case of retaliation against either the City or the PHRC. (Docket No. 27-1, at 21-27.) Defendants go to great lengths to show that, based on Plaintiff's deposition testimony, his position is that the "protected conduct" and the reason for the alleged retaliation was a letter he wrote to PHRC members criticizing PHRC Commissioner Belt's actions at a City Commission budget workshop. (Docket No. 27-1, at 23.) However, Plaintiff's Complaint, (Docket No. 1, at ¶ 14), identifies his previous filing of a lawsuit, 5:08-cv-00156, against the City of Paducah and James Zumwalt as the protected conduct on which his retaliation claims are based.[7] Therefore, the Court will only consider the parties' arguments regarding this protected conduct—the filing of the lawsuit.

A retaliation claim can be established either through direct evidence of retaliation or circumstantial evidence that would support an inference of retaliation. *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 2010). Retaliation claims supported by circumstantial evidence should be examined using the burden-shifting framework for discrimination claims established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *Id*.

Despite finding above that Plaintiff's claims under Title VII should be dismissed because the City and the PHRC are not employers under Title VII and because all but one of his Title VII claims are time-barred, the Court will address Defendants' contention of a lack of a *prima facie* case because Plaintiff's § 1981 retaliations claim are governed by the same burden-shifting analysis as retaliation claims brought under Title VII. *Wade v. Knoxville Utils. Bd.*, 259 F.3d

---

[7] In any event, the act of complaining about one's supervisor is not "protected conduct."

452, 464 (6th Cir. 2001). As explained more thoroughly below, because Defendants are entitled to summary judgment on the Title VII claims under this analysis, they are likewise entitled to summary judgment on the § 1981 claims.

Under the *McDonnell/Burdine* framework, a plaintiff has the initial burden to establish a *prima facie* case of retaliation. "In order to establish a *prima facie* case of retaliation, a plaintiff must establish that: (1) he engaged in activity protected by Title VII; (2) the exercise of his civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Nguyen v. City of Cleveland*, 229 F.3d 559, 564 (6th Cir. 2000). Plaintiff's retaliation claims are based upon: (1) his termination on April 21, 2010; (2) an imposition of a written warning on February 26, 2010; (3) a negative job performance evaluation on February 26, 2010; and (4) a salary reduction on June 2, 2009. (Docket No. 1, at ¶¶ 16-20.) It is worth noting that, although Plaintiff suffered several adverse employment actions, these adverse actions did not come at the hands of the person or entity that he sued. In the previous lawsuit, he sued the City of Paducah and James Zumwalt—not the PHRC. (*See* 5:08-cv-156, Docket No. 1.)

In any event, Plaintiff's termination took place a year-and-a-half after the filing of the 2008 federal court lawsuit, the protected conduct. Thus, there is insufficient temporal proximity to infer a causal connection between the protected activity and the adverse employment action. *Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272-73 (6th Cir. 1986) (finding mere fact that plaintiff was discharged four months after filing a discrimination claim is insufficient to support an inference of retaliation). Furthermore, mere temporal proximity alone does not support an inference of retaliation and Plaintiff has not submitted any other evidence sufficient to establish

causation. Likewise, the negative job performance evaluation and imposition of a written warning have insufficient temporal proximity to infer a causal connection with the filing of the federal court action on September 25, 2008, because they took place 519 days after the filing of the lawsuit.

The salary reduction would also have an insufficient temporal proximity to infer a causal connection, as it took place approximately eight months after the filing of the lawsuit. *Cooper*, 795 F.2d at 1272-73 (finding mere fact that plaintiff was discharged four months after filing a discrimination claim is insufficient to support an inference of retaliation). Additionally, any retaliation claim based on Plaintiff's salary reduction would be barred by the doctrine of *res judicata* or claim preclusion. Previously, in the first lawsuit, this Court found that the decision to reduce Plaintiff's salary was based entirely on legitimate, non-discriminatory reasons. (5:08-cv-00156, Docket No. 41, at 6.)

IV. Plaintiff Cannot Overcome Defendants' Proof of Legitimate, Non-Discriminatory Reasons for the Adverse Employment Actions

If a plaintiff can establish a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment action. *Fuhr v. Hazel Park School Dist.*, 710 F.3d 668, 676-77 (6th Cir. 2013). Even assuming Plaintiff could establish a *prima facie* case, he cannot overcome Defendants' proof of legitimate, non-discriminatory reasons for the adverse employment actions he suffered. Plaintiff has not adduced any evidence, other than conclusory allegations, that retaliation took place.

Plaintiff's retaliation claims are based upon: (1) his termination on April 21, 2010; (2) an imposition of a written warning on February 26, 2010; (3) a negative job performance evaluation on February 26, 2010; and (4) a salary reduction on June 2, 2009. (Docket No. 1, at ¶¶ 16-20.) As previously discussed, this Court has already determined that the decision to reduce Plaintiff's

salary was based on a legitimate, non-discriminatory reason. (5:08-cv-00156, Docket No. 41, at 6.)

As for the imposition of a written warning, after Plaintiff filed his 2008 lawsuit against the City of Paducah and James Zumwalt, the PHRC Commissioners warned Plaintiff it would be inappropriate for him to investigate human rights allegations against the City of Paducah during the pendency of his lawsuit against the City. Accordingly, the PHRC Commissioners directed Plaintiff to not investigate any human rights allegations made against the City during the pendency of his lawsuit and to refer complainants to PHRC members Andrew Coiner and Lanny King. (Docket No. 27-1, at 7.) Subsequently, a complaint against the City was filed with the PHRC alleging wrongful termination and Plaintiff conducted a cursory investigation into the termination. This investigation included preparation and distribution of a written document listing several City employees and their salaries and contained commentary and highlighting to demonstrate alleged disparities in salaries, qualifications, and recommendations for terminations between minorities and Caucasians.

Subsequently, Plaintiff made disparaging comments about PHRC Commissioner Belt at a public event and in a letter sent to the PHRC Board and numerous City officials because he was upset when Belt reduced the amount of funding the PHRC was requesting from the City Commission for the following fiscal year. Because of Plaintiff's actions concerning the investigation of the complaint against the City and his public criticism about Commissioner Belt, the PHRC issued Plaintiff a written warning on June 8, 2009.

Plaintiff received a second written warning on February 26, 2010, (Docket No. 42-2, at 13), after making allegedly disparaging comments about the City of Paducah, its elected officials, and its managerial staff, at a public event in his capacity as Executive Director of the

PHRC. On that same day, Plaintiff was evaluated by the PHRC to provide "guidance on how to improve his work performance and meet his Board's expectations." (Docket No. 27-1, at 10.) Based on this assessment, Plaintiff was directed to provide 30, 60, and 90-day goal summaries to the PHRC members by 2:00 p.m. on March 12, 2010. (Docket No. 27-5, at ¶ 9.) On April 13, 2010, the PHRC Chair emailed Plaintiff, asking him why he had not submitted these goal summaries and he responded that he had misread his Employee Performance Review during the one time he had read it. (*Id*. at ¶ 10.) Deeming this response to be direct subordination, the PHRC terminated Plaintiff's employment on April 21, 2010.

Thus, even if Plaintiff could establish a *prima facie* case, he cannot overcome Defendants' proof of legitimate, non-discriminatory reasons for any adverse employment actions he suffered. Plaintiff has not adduced any evidence, other than conclusory allegations, that retaliation took place. Therefore, summary judgment should be granted to Defendants on all claims.

V.  Kentucky Civil Rights Act Claims

Plaintiff alleges violations of the Kentucky Civil Rights Act (KCRA), Ky. Rev. Stat. § 344.010 *et seq.*, which parallel his Title VII claims. Because "the general purpose of the [KCRA] is to provide a means for implementing within the state the policies embodied in Title VII," federal courts look to federal law under Title VII in construing the KCRA. *Stanley v. Cent. Ky. Cmty. Action Council, Inc.*, 2013 WL 3280264, at *5 (W.D. Ky. June 27, 2013); *see also Brewer v. Gen. Drivers, Warehouseman & Helpers Union 89*, 190 F. Supp. 2d 966, 974 (W.D. Ky. 2002) ("Because the Kentucky Civil Rights Act was based upon, and is virtually identical to, Title VII of the Federal Civil Rights Act of 1964, courts in Kentucky have followed federal law in interpreting and applying its statute."). Plaintiff's KCRA claims, therefore, are analyzed under

the same framework as his Title VII claims.  For the same reasons Defendants are entitled to summary judgment on the Title VII claims, they likewise are entitled to summary judgment on Plaintiff's KCRA claims.

CONCLUSION

For these reasons, and consistent with the Court's conclusions above,

IT IS HEREBY ORDERED that Defendants City of Paducah and the Paducah Human Rights Commission's Motion for Summary Judgment, (Docket No. 27), is **GRANTED** and Plaintiff Stanley Beauchamp's Motion for Jury Trial is **DENIED**, (Docket No. 37).

IT IS SO ORDERED.

Date:

cc:      Stanley Beauchamp, *pro se*
P.O. Box 3442
Paducah, KY 42002

Counsel